**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| YOUNG PHARMACEUTICALS, INC., | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:15-cv-0516 (VLB) |
| AMP MEDICAL PRODUCTS, LLC, | : | |
| AND PETER MARCHESE, | : | |
| Defendants. | : | March 31, 2016 |

<u>MEMORANDUM OF OPINION DENYING DEFENDANTS'</u>
<u>MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [Dkt. #39]</u>

## *I. INTRODUCTION AND FACTUAL ALLEGATIONS*

The plaintiff, Young Pharmaceuticals, Inc. (Young"), filed this action against AMP Medical Products, LLC ("AMP") and Peter Marchese ("Marchese") on April 8, 2015, alleging trade dress and trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 1125, as well as state law claims for commercial defamation, tortious interference and unfair competition in violation of the Connecticut Unfair Trade Practices Act, Con. Gen. Stat. § 42-110 ("CUTPA").   Both Young and AMP sell medical skin care products, and Young alleges that AMP's products violate Plaintiff's trademarks.   AMP and Marchese (collectively, the "Defendants") have moved pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure to dismiss Young's Complaint in its entirety for lack of personal jurisdiction.  [Doc. #39].

The Complaint alleges that AMP is a limited liability company incorporated in Nevada with a business address in Henderson, Nevada.  [Dkt. 1, Compl. ¶ 4]. Defendant Marchese is alleged to be a Nevada "individual" with a last known

address in Henderson, Nevada, and is alleged to be the current "Manager" of AMP, as well as a former employee of Young in the capacity of Regional Marketing Manager.  [Id. ¶ 3].  The Complaint did not allege any specific facts which would allow the Court to establish jurisdiction over the Defendants, beyond the sole and vague allegation that "Defendants have sold, and continue to sell, their infringing products in the District of Connecticut."  [Id. ¶ 8].

In support of their Motion to Dismiss, Defendants attached a sworn and notarized statement completed by Defendant Marchese.  [Dkt. 39-2, Ex. A., Marchese Aff.].  Marchese claims that AMP sells its products "to doctors and medical spas at trade shows and through AMP's sales representatives," and that AMP "primarily" sells its products "in the southeastern, [m]idwestern, and western United States [Id. ¶¶ 4, 6].  AMP maintains no offices in Connecticut, owns no property in Connecticut, and has no registered agent for service in Connecticut.  [Id. ¶¶ 13-14].  Marchese claims that AMP "has not participated in any trade shows in Connecticut or even on the East Coast."  [Id. ¶ 5].  Although AMP maintains a website which displays its products, customers are not able to make purchases directly through the website.  [Id. ¶ 15].  Finally, Marchese states that "has only ever sold one of its products," labeled as an "Anti-Redness Foaming Cleanser," to "one customer in Connecticut," although Marchese does not elaborate on the nature of the sale or the revenue obtained therefrom.  [Id. ¶ 12].

In support of its Opposition to the Motion to Dismiss, Plaintiff attached a Declaration from Young's President, John Kulesza.  [Dkt. 53-2, Kulesza Decl.].  The

2

Declaration states that customers in the cosmetic industry "attend trade shows all over the country" and that Young has lost clients in Connecticut "as a result of" the conduct alleged in the Complaint, including one client with "annual orders of approximately $75,000."  [Id. ¶¶ 7, 10].  However, Plaintiff could not offer any additional specific facts elaborating upon Defendants' contacts with the State of Connecticut.

The Defendants contend that this Court lacks personal jurisdiction over them pursuant to Connecticut's long arm statutes, Conn. Gen. Stat. § 52-59b, and under a due process analysis, because they do not have sufficient minimum contacts with the State of Connecticut and are not subject to jurisdiction under Connecticut's long-arm statute.  For the reasons set forth below, the Defendants' motion to dismiss for lack of personal jurisdiction is DENIED WITHOUT PREJUDICE.

## II.  STANDARD OF REVIEW

To successfully defeat a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the Court has personal jurisdiction over the defendant.  *Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir.1996).  "At this stage of the proceedings, the plaintiffs must make out only a *prima facie* showing of personal jurisdiction through their own affidavits and supporting materials and all affidavits and pleadings must be construed in the plaintiffs' favor."  *Edberg v. Neogen Corp.*, 17 F. Supp. 2d 104, 110

3

(D. Conn. 1998) (citing *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

"[T]he amenability of a foreign corporation to suit in a federal court in a diversity action is determined in accordance with the law of the state where the court sits . . . ."  *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (in banc); *accord Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985). Accordingly, this Court applies the law of the State of Connecticut.  In order to ascertain whether a court has personal jurisdiction, Connecticut applies a two-step analysis.  A court must first look to the forum State's long-arm statute and determine whether that statute reaches the foreign corporation.  If the long-arm statute authorizes personal jurisdiction over a defendant, the court must then decide whether the exercise of jurisdiction over that party offends due process. *Bensmiller v. E.I. Dupont de Nemours & Co.*, 47 F.3d 79, 81 (2d Cir. 1995) (citing *Greene v. Sha-Na-Na*, 637 F.Supp. 591, 59 (D. Conn. 1986)).

### III. ANALYSIS

"When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of proving that the court has jurisdiction over the defendant." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001).  A plaintiff facing a Rule 12(b)(2) motion to dismiss made before any discovery only needs to allege facts constituting a prima facie showing of personal jurisdiction. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005).  A plaintiff can make the requisite factual showing through its "own affidavits and supporting materials"

4

which the Court may review and consider. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). To establish a *prima facie* case of personal jurisdiction over a defendant, a plaintiff must satisfy a two part inquiry: "[f]irst, it must allege facts sufficient to show that Connecticut's long-arm statute reaches the defendant, and second, it must establish that the court's exercise of jurisdiction will not violate due process." *Chirag v. MT Marida Marguerite Schiffahrts*, No. 3:12CV879 (SRU), 2013 WL 1223293, at *1 (D. Conn. Mar. 26 2013) (*citing Knipple v. Viking Communications, Ltd.*, 674 A.2d 426, 428–29 (Conn. 1996)).

### A.  Connecticut's Long-Arm Statute

In diversity cases, federal courts must look to the forum state's long-arm statute to determine if and when personal jurisdiction can be obtained over nonresident defendants. *Savin v. Ranier*, 898 F .2d 304, 306 (2d Cir.1990). Connecticut's long-arm statute applicable to non-resident individuals, Section 52-59(b) has also been held to apply to non-resident LLCs. *See Austen v. Catterton Partners V*, LP, 729 F. Supp. 2d 548, 559 (D. Conn. 2010); *see also Matthews v. SBA, Inc.*, 149 Conn. App. 513, 544-52, 555-61 (2014). Section 52-59(b) provides, in relevant part:

> [A] court may exercise personal jurisdiction over any nonresident individual, . . . who in person or through an agent:  (1) Transacts any business within the state; (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) commits a tortious act outside the state causing injury to a person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages

**in any other persistent course of conduct, or derives substantial
revenue from goods used or consumed or services rendered, in the
state, or (B) expects or should reasonably expect the act to have
consequences in the state and derives substantial revenue from
interstate or international commerce; (4) owns, uses or possesses
any real property situated within the state; or (5) uses a computer, . .
. or a computer network, . . . located within the state.**

**Conn. Gen. Stat. § 52-59b.   In this case, Young has made a *prima facie*
showing that this Court may have personal jurisdiction over the Defendants
pursuant to Section 52-59b(a)(3) as the Defendants' alleged infringement and
tortious interference are plausibly alleged to have caused "injury to person or
property within the state" and AMP is likely, based upon Marchese's own
representations, to "derive[] substantive revenue from interstate commerce."  Conn.
Gen. Stat. § 52-59b(1)(3).**

**Plaintiff also alleges that personal jurisdiction is proper pursuant to Section
52-59b(a)(1) because AMP has transacted business in Connecticut.  The statute
does not provide a precise definition of what constitutes "transact[ing] any
business within the state" within the meaning of Section 52-59b(a)(1), but the
Connecticut Supreme Court has interpreted the phrase to include "a single
purposeful business transaction."  *Zartolas v. Nisenfeld*, 440 A.2d 179, 181 (Conn.
1981); *Solano v. Calegari*, 949 A.2d 1257, 1263 (Conn. App. 2008); *Avant Capital
Partners, LLC v. Strathmore Dev. Co. Michigan*, LLC, No. 3:12-CV-1194 (VLB), 2013
WL 5435083, at \*3 (D. Conn. Sept. 30, 2013).  In determining whether a business
transaction qualifies as purposeful, courts do not apply a rigid formula but rather
balance "public policy, common sense, and the chronology and geography of the**

6

relevant factors." *Harris v. Wells*, 832 F.Supp. 31, 34 (D. Conn. 1993) (WWE) (*quoting Zartolas*, 440 A.2d at 182). Courts are instructed to examine the "nature and quality, rather than the amount of Connecticut contacts to determine whether there was purposeful activity." *Avant Capital Partners*, LLC, 2013 WL 5435083, at *3.

Plaintiff alleges that Defendants have sold infringing products to customers within the State of Connecticut, and, while that allegation lacks detail sufficient for the Court to analyze the "nature and quality" of any one business transaction, Defendants have already admitted to selling one allegedly infringing product to at least one consumer in the State of Connecticut.  Notably, Marchese did not allege in his affidavit that this sale was made unknowingly or that AMP did not know the location of the customer.  Because jurisdictional discovery may shed further light on the "nature and quality" of the sale and whether it constitutes a "a single purposeful business transaction," *Zartolas*, 440 A.2d at 181, the Court reserves judgment on whether personal jurisdiction may be exercised pursuant to Section 52-59b(a)(1).

## B.  Due Process Inquiry

Even though jurisdiction may be exercised over the Defendants under Connecticut's long-arm statute, Section 52-59b(a)(1) or (a)(3), the Court must still determine whether the exercise of jurisdiction in this case would comport with the requirements of Due Process.  *See In re Helicopter Crash near Wendle Creek*, 485 F. Supp. 2d 47, 51 (D. Conn. 2007).  The purpose of these requirements are to protect

7

"an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contact, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985).  The Supreme Court has established a two-pronged test for determining whether a court has personal jurisdiction over a non-resident corporation.  *See International Shoe Co. v. Washington*, 362 U.S. 310, 314 (1945)).  First, the corporation must have "certain minimum contacts" with the forum state, and second, maintenance of the suit must not offend traditional notions of fair play and substantial justice."  *Kernan v. Kurz-Hastings*, 175 F.3d 236, 242 (2d Cir. 1999) (*citing Calder v. Jones*, 465 U.S. 783, 788 (1984)).

Where, as here, a court exercises personal jurisdiction over a foreign defendant in a suit "arising out of or related to the defendant's contacts with the forum," such jurisdiction is referred to as "specific jurisdiction."  *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 414 n.8 (1984).[1]  To exercise specific jurisdiction over a defendant, the plaintiff's action must be related to the defendant's contacts within the forum, and "the requisite 'minimum contacts' must be such that [the defendant] can 'reasonably anticipate' being hauled into court in the forum state."  *Vertrue Inc. v. Meshkin*, 429 F. Supp. 2d 479, 495 (D. Conn. 2006) (*citing Burger King*

---

[1] By contrast a second situation occurs when a court exercises personal jurisdiction over a foreign defendant in an action not arising out of or relating to the defendant's contacts with the forum, which is referred to as "general jurisdiction."  *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 414, n.9.  However, where the action does not arise out of or relate to a foreign defendant's contacts with the forum state, the defendant's contacts with that state must be "continuous and systematic" in order for the court to exercise jurisdiction over him.  Id. at 415.  Neither party alleges that

*Corp.*, 471 U.S. at 474).  The minimum contacts inquiry rests upon a totality of the circumstances analysis: all of the defendant's contacts within the forum state "must indicate that jurisdiction is proper."  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005).  Central to this inquiry is whether the defendant has "purposefully avail [ed] itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."  *Vertrue Inc.*, 429 F.Supp.2d at 495 (*quoting Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

In the instant case, Plaintiff pled generally and vaguely that Defendants "Defendants have sold, and continue to sell, their infringing products in the District of Connecticut."  [Compl. ¶ 8].  In response, Defendant Marchese claims that he has made only a single sale of an allegedly infringing product to the State of Connecticut, and that he has not sold any of the other five infringing products to customers within the State.  [Dkt. 39-2, Ex. A., Marchese Aff. ¶ 12].  Plaintiff could offer no facts in its Opposition to the Motion to Dismiss to dispute Marchese's assertion that only one sale has occurred within the State and only as to one of the six infringing products.  Although, as discussed above, a single purposeful sale of an infringing product could trigger personal jurisdiction under Connecticut's Long-Arm Statute, it is another question entirely whether exercise of jurisdiction in such circumstances would comport with Due Process.

The United States Supreme Court has strongly suggested that a single sale of a product within a state, by itself, is insufficient to establish "minimum contacts"

---

general jurisdiction may apply in the instant case.

such that personal jurisdiction comports with the requirements of Due Process.  In *J. McIntyre Machinery, Ltd. v. Robert Nicastro*, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011), a distributor agreed to sell the defendant's machines in the United States and defendant's officials "attended trade shows in several States" but not in New Jersey, the forum of the lawsuit.  *Id.* at 2790.  Four machines "ended up in New Jersey."  *Id.*  After discovery, the trial court found that the "defendant does not have a single contact with New Jersey short of the machine in question ending up in this state."  *Id.*  Justice Kennedy's plurality opinion held that "[t]hese facts may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market."  *Id.*  In a concurring opinion joined by Justice Alito, Justice Breyer wrote that:

> "None of our precedents finds that a single isolated sale, even if accompanied by the kind of sales effort indicated here, is sufficient. Rather, this Court's previous holdings suggest the contrary. The Court has held that a single sale to a customer who takes an accident-causing product to a different State (where the accident takes place) is not a sufficient basis for asserting jurisdiction. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). And the Court, in separate opinions, has strongly suggested that a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place.

*Id.* at 2792.   Thus, six justices in *J. McIntyre* appeared to agree that a single sale in a given forum does not provide sufficient "minimum contacts" without at least, as Justice Breyer stated, "something more."  *Id.*  Plaintiff needed to have offered evidence of, for example, "special state-related design, advertising, advice," or "marketing."  *Id.*  Justice Breyer also noted two concurring opinions in *Asahi*

*Metal Industry Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102 (1987), which also strongly suggest the need for "something more" than a single sale.  In *Asahi*, Justice Brennan argued that jurisdiction could lie where a sale in a State is part of "the regular and anticipated flow" of commerce into the State, but not where that sale is only an "edd[y]," or an isolated occurrence.  *Id.* at 120-121.  Justice Steven's concurrence argued that "the volume, the value, and the hazardous character" of a product could affect the jurisdictional inquiry, but emphasized Asahi's "regular course of dealing."  *Id.* at 121-22.

Plaintiff has not alleged sufficient facts from which the Court can infer that Defendants sought specifically to serve the Connecticut market through marketing or through customized, state-specific sales or that Defendants intended to engage in a regular course of dealing within the State.  *See Tatoian v. Junge*, No. 3:13-CV-1255 VLB, 2013 WL 6195486, at *6 (D. Conn. Nov. 26, 2013) (mere receipt of plaintiff's funds only constituted a "passive act which cannot logically confer jurisdiction" without proof that the defendant affirmatively solicited plaintiff's business in Connecticut).  However, the Court is reluctant to dismiss this action at this early stage solely on the basis of Defendant Marchese's representation that only one infringing sale has taken place within the State, even if Plaintiff has no information to dispute that representation at this time.  Because the Court determines below that limited jurisdictional discovery is appropriate, the Court reserves judgment on whether Defendants have purposefully availed themselves of the benefits and

protections of Connecticut law such that exercise of jurisdiction comports with Due Process.

Plaintiff also argues that Defendants have sufficient "minimum contacts" with the State of Connecticut by virtue of AMP's website, which, Plaintiff notes, "advertises the infringing products and provides its comprehensive contact information including email addresses, phone numbers, and fax numbers." [Pl.'s Opp. Mem. at 9]. However, Defendants have noted that their website is "passive," and does not allow for customer interaction or direct sales through the internet. *See Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Grp., Inc.*, 312 F. Supp. 2d 247, 254-55 (D. Conn. 2004) (website lacking direct sale features and requiring a potential customer to initiate contact with the defendant by telephone, mail, or email was "passive" website for jurisdictional purposes). Courts in recent decisions have agreed that such "passive" websites, which do not allow customer interaction or direct sales, are not sufficient to establish minimum contacts in any given state. *See, e.g.*, *Am. Wholesalers Underwriting*, 312 F. Supp. at 255 ([e]xercising personal jurisdiction by way of specific jurisdiction predicated upon the maintenance of a passive web site would not comport with Due Process); *On–Line Technologies v. Perkin Elmer Corp.*, 141 F.Supp.2d 246, 265 (D.Conn. 2001) (same). Merely creating a website "may be felt nationwide—or even worldwide—but, without more, it is not an act purposefully directed toward the forum state." *Bensusan Rest. Corp. v. King*, 937 F. Supp. 295, 301 (S.D.N.Y. 1996) *aff'd*, 126 F.3d

12

25 (2d Cir. 1997).  The Court will not exercise personal jurisdiction over AMP on the basis of its website.


### C. Jurisdictional Discovery

"A district court has wide latitude to determine the scope of discovery," *In re Agent Orange Prod. Liab. Litig.*, 517 F.3d 76, 103 (2d Cir. 2008), and is typically within its discretion to deny jurisdictional discovery when "the plaintiff [has] not made out a prima facie case for jurisdiction."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 255 (2d Cir. 2007) (citing cases).  However, if a plaintiff has identified a genuine issue of jurisdictional fact, jurisdiction discovery is appropriate even in the absence of a prima facie showing as to the existence of jurisdiction.  *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207–08 (2d Cir. 2003) (per curiam ).

Because the Court has found, as discussed above, that a genuine issue of material fact exists as to whether Marchese's representation that AMP has only made one sale of one infringing product in Connecticut is accurate, the Court agrees to Plaintiff's request for limited jurisdictional discovery.  If Plaintiff cannot discover any additional facts relevant to AMP's contacts within this State and the record suggests that Defendants have indeed made only one, isolated sale of an allegedly infringing product within the State of Connecticut, the Court would be inclined to grant a renewed Motion to Dismiss under Rule 12(b)(2).[2]

---

[2] The Court encourages the Plaintiff to consider withdrawing and re-filing the instant case in another District or moving for Transfer of this action to the District of Nevada pursuant to 28 U.S.C. § 1406(a).

## IV.  CONCLUSION

Based on the above reasoning, the Court concludes that jurisdictional discovery is appropriate in order to determine whether the Court has personal jurisdiction over the Defendants.  Such discovery should be completed no later than May 31, 2016 and any renewed 12(b)(2) motion must be filed before June 30, 2016. Accordingly, Defendants' Motion to Dismiss [Doc. #39] is DENIED WITHOUT PREJUDICE TO RE-FILING.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  March 31, 2016.

14