UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

YOUNG PHARMACEUTICALS, INC.     :
and SKINLUMA, LLC,              :
          Plaintiffs,           :       CIVIL ACTION NO.
                                :       3:15-CV-516(VLB)
v.                              :
                                :
PETER MARCHESE and              :       February 6, 2017
AMP MEDICAL PRODUCTS, LLC,      :
          Defendants.           :

MEMORANDUM OF DECISION
DENYING DEFENDANT AMP MEDICAL PRODUCTS, LLC'S MOTION TO
DISMISS OR TRANSFER VENUE [DKT. 89] AND GRANTING PLAINTIFF
YOUNG PHARMACEUTICALS, INC.'S MOTION TO AMEND [DKT. 90]

The Plaintiffs, Young Pharmaceuticals, Inc. ("Young") and Skinluma LLC ("Skinluma"), bring this action for trademark infringement, trade dress infringement, unfair competition, and tortious interference against Defendants Peter Marchese and AMP Medical Products LLC ("AMP"). Defendant AMP has moved to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), or to transfer this case to the District of Nevada pursuant to 28 U.S.C. §§ 1404(a) or 1406(a). [Dkt. 89-1 at 1-2, 15.] Thereafter, Young moved for leave to file a third amended complaint. [Dkt. 90.] For the reasons that follow, Plaintiffs' Motion for Leave to Amend is GRANTED and AMP's Motion to Dismiss or Transfer Venue is DENIED.

I.  Background

Defendant AMP is a corporation organized and existing under the laws of Nevada and having its principal place of business in Nevada. [Dkt.

1

89-2 ("Marchese Aff.") ¶ 2.] Defendant Peter Marchese is AMP's Managing Member, and is domiciled in Nevada. *Id.* AMP sells skincare products to doctors and medical spas, at trade shows, and through AMP sales representatives. *Id.* ¶ 5. AMP has never participated in a trade show in Connecticut. *Id.* ¶ 6. AMP maintains a website but does not sell its products on this website, therefore no Connecticut residents have purchased any AMP products or services through this website. *Id.* ¶ 15. Similarly, AMP has never advertised in Connecticut, and maintains no bank accounts in Connecticut. *Id.* ¶¶ 17-18. Prior to this lawsuit, AMP had never been sued in any Connecticut court. *Id.* ¶ 19.

Although AMP maintains no offices, owns no property, and has no registered agent in Connecticut, *id.* ¶¶ 13-14, on two separate occasions, AMP sold products using the allegedly infringing mark, "Anti-Redness Foaming Cleanser," to a reseller of dermatological products. [*Id.* ¶ 12; Dkt. 92, Exh. 4, Invoices dated 9/25/14 and 3/12/15.] This allegedly infringing product was shipped to Connecticut on two separate occasions. *Id.* From the date of AMP's formation on or about May 14, 2014 until the instant suit was filed, AMP's gross worldwide sales totaled $198,827. [Dkt. 84-1 at 10.] Of this amount, $11,613 were made in Connecticut, of which $450 were of the two allegedly infringing products. [Dkt. 84-1 at 10.] As such, nearly 6% of AMP's sales were made in Connecticut.

Mr. Marchese, whom Plaintiffs aver is AMP's "sole owner and agent," also travels regularly to Connecticut to "check in" with a Connecticut

customer, and can be reached at telephone numbers with Connecticut area codes.  [Dkt. 92-1 ("Kasper Aff.") ¶¶ 6-7.]  Plaintiffs also allege that a different company that Mr. Marchese owns, called Metro Labels & Marking Systems, LLC, is headquartered in Connecticut, that Mr. Marchese maintains a residence in Connecticut, and that AMP has done business with a second Connecticut client.  [Dkt. 92-2 ("Kulesza Aff.") ¶¶ 6-8.]  The record contains no evidence regarding the nature or frequency of Mr. Marchese's use of the Connecticut residence, or what if any connection Metro Labels has with this case.

## II.  Motion for Leave to Amend the Pleadings

The Court first addresses whether Plaintiffs should be permitted to file a third amended complaint.  Rule 15 of the Federal Rules of Civil Procedure provides that leave to amend the pleadings should be "freely give[n] . . . when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Within the Second Circuit, leave will be given unless the non-movant establishes prejudice or bad faith.  *Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725–26 (2d Cir. 2010) (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)).  Of these, prejudice to the non-movant is the more important factor.  *Id.*  "Amendment may be prejudicial when, among other things, it would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial' or 'significantly delay the resolution of the dispute.'"  *Id.* (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)).

3

Defendants offer no evidence that Young seeks leave to amend in bad faith.  Instead, Defendants claim that amendment is prejudicial, because it precludes them from addressing Young's new allegations in their motion to dismiss.  However, Young's amended complaint was filed on the same date as Young's opposition to AMP's motion to dismiss, giving Defendants ample time to respond to the new allegations in a reply brief.  To the extent Defendants believed the page limit or time allotted was inadequate to address these allegations, they could easily have sought leave to file supplemental briefing.  Defendants have offered no evidence that they must expend significant additional resources to investigate the new allegations, or that these allegations will delay the disposition of this case.  In light of these circumstances, the Court finds that Defendants will suffer no prejudice if Young is permitted to amend.  Plaintiff Young's motion for leave to amend is therefore GRANTED.

**III.** <u>Motion to Dismiss for Lack of Personal Jurisdiction</u>

      **A.** <u>Legal Standard</u>

A civil action should be dismissed if the court lacks personal jurisdiction over a party.  Fed. R. Civ. P. 12(b)(2).  "When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."  *Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Grp., Inc.*, 312 F. Supp. 2d 247, 251 (D. Conn. 2004) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).  Prior to

**4**

discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction and by making a *prima facie* case of jurisdiction. *Id.* (citing *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). Where, as here, the parties have conducted discovery regarding the Defendants' contacts with Connecticut, but no evidentiary hearing has been held, "plaintiffs' *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (citing *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996)) (quotations omitted). "When considering a Rule 12(b)(2) motion, the court construes any factual averments and resolves all doubts in the plaintiff's favor." *Am. Wholesalers Underwriting*, 312 F. Supp. 2d at 251 (citing *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)). The same standard is applicable to review of venue. *Panterra Engineered Plastics, Inc. v. Transp. SYS. Sols., LLC*, 455 F. Supp. 2d 104, 108–09 (D. Conn. 2006) (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)).

B. <u>Discussion</u>

1. <u>Personal Jurisdiction</u>

"To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the Court must engage in a two-step analysis." *Chloe*, 616 F.3d at 163. To establish a prima facie case of

personal jurisdiction, a plaintiff must (1) allege facts sufficient to show that the forum state's long-arm statute reaches a defendant; and (2) establish that the Court's exercise of jurisdiction will not violate due process.  *Id.*; *Chirag v. MT Marida Marguerite Schiffarhrts*, 933 F. Supp. 2d 349, 352 (D. Conn. 2013), *aff'd*, 604 F. App'x 16 (2d Cir. 2015).

### a.  Connecticut Long-Arm Statute

Connecticut's long-arm statute applicable to non-resident individuals, Conn. Gen. Stat. § 52-59(b), has also been held to apply to non-resident LLCs.  *See Austen v. Catterton Partners V, LP*, 729 F. Supp. 2d 548, 559 (D. Conn. 2010); *see also Matthews v. SBA, Inc.*, 149 Conn. App. 513, 544-52, 555-61 (2014).  Section 52-59(b) provides, in relevant part:

> [A] court may exercise personal jurisdiction over any nonresident individual, . . . who in person or through an agent:
>
> (1) Transacts any business within the state;
>
> (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act;
>
> (3) commits a tortious act outside the state causing injury to a person or property within the state, except as to a cause of action for defamation of character arising from the act, if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;
>
> (4) owns, uses or possesses any real property situated within the state; or
>
> (5) uses a computer, . . . or a computer network, . . . located within the state.

6

Conn. Gen. Stat. § 52-59(b).

"Under Connecticut law, trademark infringement is considered a 'tort' for the purposes of determining personal jurisdiction pursuant to the state long-arm statute." *Broad. Mktg. Int'l, Ltd. v. Prosource Sales & Mktg., Inc.*, 345 F. Supp. 2d 1053, 1058 (D. Conn. 2004). "The tortious conduct in a trademark infringement [or unfair competition] action is deemed to take place 'where the passing off occurs.'" *Whelen Eng'g Co. v. Tomar Elecs., Inc.*, 672 F. Supp. 659, 662 (D. Conn. 1987) (quoting *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir. 1956)). The "passing-off" occurs "where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's." *Id.* (citing Am. Wholesalers, 312 F. Supp. 2d at 253). "A showing of only one infringing sale is enough to establish long-arm jurisdiction over the infringing party." *Id.*

Plaintiffs have alleged facts sufficient to show that AMP is subject to long-arm jurisdiction pursuant to Conn. Gen. Stat. § 52- 59(b). Neither party disputes that AMP has sold $11,613 worth of products to Connecticut customers, representing roughly 6% of AMP's total revenue during the period between AMP's incorporation and the filing of this lawsuit. This revenue was a product of numerous sales over the course of two years. Plaintiff has also averred that a Connecticut customer placed two orders for a total of 18 units of the allegedly infringing "Anti-Redness Foaming Cleanser" from Connecticut, which were then shipped to this customer in

Connecticut.[1]  [Dkt. 89, Exh. D ("Midgley Dep.") at 49; Dkt. 92, Exh. 4.]
AMP's conduct triggers long-arm jurisdiction on the basis of subsections
(1) and (3) of Conn. Gen. Stat. § 52-59(b).

### b.  Due Process

"The constitutional analysis under the Due Process Clause consists
of two separate components:  the 'minimum contacts' inquiry and the
'reasonableness' inquiry."  *Licci ex rel. Licci v. Lebanese Canadian Bank,
SAL*, 673 F.3d 50, 60 (2d Cir. 2012).

### i.  Minimum Contacts

The "minimum contacts" inquiry requires the Court to consider
whether the Defendant has "purposefully avail[ed] itself of the privilege of
conducting activities within the forum state, thus invoking the benefits and
protections of its laws."  *See Vertrue v. Meshkin*, 429 F. Supp. 2d 479, 495
(D. Conn. 2006) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  A
defendant's conduct and contacts with the forum state must such that the
defendant "should reasonably anticipate being haled into court there."
*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-
Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)); *Grand River
Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 166 (2d Cir. 2005) (holding

---

[1] Defendant claims that these products were labeled for resale and did not
bear the alleged "Anti-Redness Foaming Cleanser" mark.  However, the
label that retail customers see may be irrelevant to whether the product
infringed Plaintiff's claimed mark, where the relevant universe of potentially
confused consumer may well be a dermatological reseller rather than a
retail customer.  Moreover, the universe of potentially confused consumers
is a question of fact ill-suited for disposition at the motion to dismiss stage.

that courts must consider a totality of the circumstances to determine whether a defendant's contacts with the forum state justify the exercise of personal jurisdiction).

AMP has sufficient contacts to give rise to personal jurisdiction in Connecticut.  The record shows that Mr. Marchese traveled to Connecticut periodically to conduct business on AMP's behalf between AMP's formation and the date on which this lawsuit was filed.  The record further suggests that AMP made numerous sales to Connecticut customers throughout this period, and that at least one Connecticut customer purchased AMP products by calling Mr. Marchese's Connecticut telephone number.  [Kasper Aff. ¶¶ 6-7.]  While AMP sold allegedly infringing products to a Connecticut customer on only two occasions, totaling approximately $450, these sales were wholesale transactions, purchased with the intent of reselling the allegedly infringing product (presumably to Connecticut customers).  Courts have held similar circumstances sufficient to give rise to personal jurisdiction.  *See, e.g.*, *Broad. Mktg.*, 345 F. Supp. 2d at 1062 (holding that sales of $518.27 to Connecticut customers gave rise to personal jurisdiction); *Mashantucket Pequot Tribe v. Redican*, 309 F. Supp. 2d 309, 315 (D. Conn. 2004) (finding the exercise of jurisdiction appropriate where the defendant made "at least two visits" to Connecticut and made attempts by email or phone to arrange meetings with Connecticut customers); *cf. WorldCare Corp. v. World Ins. Co.*, 767 F. Supp. 2d 341, 360 (D. Conn. 2011) (finding insufficient contacts where the defendant was

9

licensed to do business in Connecticut, but had *never* sold insurance products to Connecticut residents).  This Court sees no reason to adopt a different approach.

### ii.    Reasonableness

The "reasonableness" inquiry requires the Court to decide "whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case."  *Licci*, 673 F.3d at 60 (quotations omitted).  The Supreme Court has held that courts must evaluate the following factors as part of this analysis: "(1) the burden that the exercise of jurisdiction will impose on the defendant[s]; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff[s'] interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996) (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court,* 480 U.S. 102, 113–14 (1987)).

None of these factors favor dismissal.  First, because Plaintiffs have offered evidence that Mr. Marchese is AMP's "sole owner and agent," and that he travels to Connecticut regularly and owns property here, the burden on AMP corporate representatives of litigating in Connecticut is low.  Second, while trademark enforcement is important to all states,

10

Connecticut courts have a strong interest in adjudicating trademark cases which concern Connecticut companies, and which implicate Connecticut common law causes of action.  Connecticut has a substantial interest in the viability of business entities resident in the state and in the preservation of their exclusive proprietary rights.  Third, the Plaintiffs' home state of Connecticut is the most convenient forum for it to seek relief, as evidenced by its decision to file suit in Connecticut and its choice of Connecticut counsel.  Fourth, the interstate judicial system's interest in obtaining the most efficient resolution of the controversy also favors Connecticut because the case is here, this Court is familiar with the case, both parties have counsel of their choice here, many of the events at issue occurred here, and critical witnesses are here, in particular AMP's non-party customers, who will likely be called to testify.  The last factor also favors Connecticut.  Although both Nevada and Connecticut share an interest in affording their residents a neutral forum in which to resolve trademark disputes, the revenue AMP derives from the alleged infringing sales in Connecticut is paltry compared to that derived by the Plaintiff.

Defendant AMP's Motion to Dismiss is therefore DENIED.

IV. <u>Motion to Transfer Venue</u>

Defendants move in the alternative for transfer pursuant to 28 U.S.C. §§ 1404(a) or 1406(a).  Section 1406(a) provides, "The district court of a district in which is filed a case laying venue in the wrong division or district shall . . . if it be in the interest of justice, transfer such case to any district

or division in which it could have been brought."  Section 1404(a) provides, in relevant part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  (emphasis added).

"Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Atl. Marine*, 134 S. Ct. at 577.  Pursuant to 28 U.S.C. § 1391(b), "a civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."  Plaintiffs have alleged that Defendants' actions deprived them of substantial revenue from Connecticut customers.  Although Defendants dispute this characterization and offer evidence to the contrary, it would be inappropriate at this stage of the litigation for the Court to resolve this factual dispute.  Accepting Plaintiffs' allegations and factual averments as true, and drawing all reasonable inferences in Plaintiffs' favor, a substantial part of the events giving rise to this cause of action took place in the District of Connecticut.  Transfer under section 1406(a) is therefore unwarranted.

To decide whether transfer under section 1404(a) is proper, courts are required to conduct an "individualized, case-by-case consideration of convenience and fairness."  *See Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).  "A district court is given broad discretion in making determinations

12

of convenience and fairness under [section 1404(a)]," *Hawley v. Accor North America, Inc.*, 522 F. Supp. 2d 256, 258 (D. Conn. 2008), and should consider factors affecting the interest of justice and trial efficiency, *Hanninen v. Fedoravitch*, 583 F. Supp. 2d 322, 331 (D. Conn. 2008); *Miller v. Meadowlands Inc.*, 822 F. Supp. 61, 66 (D. Conn. 1993).  Among the factors ordinarily considered are: (1) the plaintiffs' choice of forum, (2) the locus of operative facts, (3) the convenience of parties and witnesses, (4) the availability of process to compel the attendance of unwilling witnesses, (5) the location of relevant documents and relative ease of access to sources of proof, and (6) the relative means of the parties.  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006); *N.Y. Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010).

　　　"[A] plaintiff's choice of forum is presumptively entitled to substantial deference . . . [and] unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)) (citations omitted). Defendants have offered no evidence regarding why they believe Plaintiffs' choice of forum should be disturbed other than that AMP and Mr. Marchese are domiciled in Nevada.  However, the fact that Nevada is more convenient for the Defendants is not alone sufficient to overcome the presumption in favor of Connecticut.

Moreover, the Court may only transfer venue to a forum where venue would be proper or where the suit could have been brought.  *See* 28 U.S.C. §§ 1404(a), 1406(a).  Defendants have offered no argument or evidence to suggest—and it is not clear from the face of the Complaint—that the District of Nevada would be an appropriate venue for the Plaintiffs. Defendant AMP's Motion to Transfer Venue is therefore DENIED.

### V.  Conclusion

For the foregoing reasons, Plaintiff Young's motion for leave to file a third amended complaint is GRANTED, and Defendant AMP's motion to dismiss, or in the alternative, to transfer venue to the District of Nevada is DENIED.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  February 6, 2017